Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Cassidy T. Young (SBN 342891)
cassidy.young@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard, Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: +1 206 623 7580
Facsimile: +1 206 623 7022

Attorneys for Defendant PNC Bank, N.A.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELLY MELIAN and MICHAEL TREON, individually and on behalf of all those similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>PNC BANK, N.A., DOES 1 through 20, inclusive,<br><br>              Defendants. | Case No. 2:24-cv-09034-MRA-PD<br><br>[Assigned to the Honorable Mónica Ramírez Almadani]<br><br>**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:           August 18, 2025<br>Time:          1:30 p.m.<br>Courtroom:    9B |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 18, 2025, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 9B of the United States District Court for the Central District of California, located at Ronald Reagan Building & U.S. Courthouse, 411 W. Fourth Street, Courtroom 9B, Santa Ana, CA 92701, Defendant PNC Bank, N.A. ("PNC") will, and hereby does, move the Court for an Order granting judgment on the pleadings against Plaintiffs Nelly Melian and Michael Treon ("Plaintiffs") and in favor of PNC, including an award of PNC's reasonable attorneys' fees incurred in bringing this Motion.

This Motion is based on the pleadings in this case, and the settlement, release, and final judgment in *Kazi v. PNC Bank N.A.*, Case No. 3:18-cv-04810-JCS (N.D. Cal.) ("*Kazi*"). Plaintiffs were members of the *Kazi* class, did not opt out of the *Kazi* settlement, and received settlement payments for $136,316.84 and $298,586.62, respectively. Thus, under the doctrines of settlement, release, and res judicata, *Kazi* bars all Plaintiffs' claims through June 1, 2023, that were or could have been brought in *Kazi*.

The claims asserted in this case ("*Melian*") were or could have been asserted in *Kazi* and are based on the facts alleged there. Both *Melian* and *Kazi* focus on California Mortgage Loan Officers ("MLOs"), how MLOs are compensated, how MLO incentive compensation plans operate, whether MLOs suffered improper deductions, what productive and nonproductive work MLOs performed, and whether MLOs were fully compensated for all time worked. Both cases thus involve the same basic documents, such as time reporting and break policies, compensation plans and policies, work schedules, time records, compensation records, and pay statements. And, both cases assert the same basic claims: failure to pay for all time worked, illegal deductions from wages, failure to pay all amounts due on termination (with related waiting time penalties), failure to provide compliant wage stubs and statements, unfair business practices, and attorneys' fees and costs related to such claims. Although all *Kazi* class members (including Plaintiffs) were compensated for and released all these claims

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

through June 1, 2023, Plaintiffs are pursuing repetitive claims in *Melian* in the hopes of receiving a windfall. The Court should grant this Motion, enter judgment in PNC's favor, and dismiss Plaintiffs' claims through June 1, 2023.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 that took place on June 26, 2025. *See* Declaration of Cassidy T. Young ¶ 2. The Parties thoroughly discussed the substance and potential resolution of this Motion via videoconference. *Id.*

This Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, PNC's Request for Judicial Notice, the Declaration of Cassidy T. Young, the complete Court files and records in this action, and all matters that may be properly considered by the Court at the hearing on this Motion.

Dated:  July 2, 2025                    By:  _Cassidy Young_____

                                              Paul W. Sweeney, Jr.
                                              Patrick M. Madden
                                              Cassidy T. Young

                                              Attorneys for Defendant
                                              PNC Bank, N.A.

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................... 3

     A.    *Kazi* was filed. ..................................................................... 3

     B.    Kazi contemporaneously described his class claims in PAGA Notices. ................. 3

     C.    *Kazi* was actually litigated. ................................................. 4

     D.    The parties reached a settlement in *Kazi* that releases claims through June 1, 2023. ............................................................................ 5

     E.    Plaintiffs filed the instant action. ........................................ 7

     F.    Plaintiffs objected to the *Kazi* settlement, and the *Kazi* court overruled those objections and granted final approval of the settlement. ........................ 7

     G.    Plaintiffs appeal in *Kazi*, this Court stays *Melian*, then Plaintiffs dismiss the appeal. ................................................................ 10

III.    LEGAL STANDARD ...................................................................... 10

IV.    ARGUMENT ................................................................................... 10

     A.    Res judicata bars Plaintiffs' claims through June 1, 2023. ................... 10

           1.    Plaintiffs are parties in both *Kazi* and *Melian*, thus privity exists. ........... 11

           2.    *Kazi* was dismissed by final judgment on the merits. .............................. 11

           3.    There is an identity of claims between *Kazi* and *Melian* ......................... 11

           4.    Whether both cases involve precisely the same claims is irrelevant. ....... 15

     B.    The claims asserted in this action were released by Plaintiffs through the *Kazi* settlement. ............................................................... 16

     C.    PNC is entitled to reasonable attorneys' fees based on Plaintiffs' breach of the *Kazi* settlement agreement. .................................................... 19

V.     CONCLUSION ................................................................................ 20

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Cases**

5

*Bland v. PNC Bank, N.A.*,
    Case No. 2:15-cv-01042-AJS (W.D. Pa.) ................................................................. 5

6

7

*Cancilla v. Ecolab, Inc.*,
    2014 WL 2943237 (N.D. Cal. 2014).......................................................... 12, 14, 15

8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)................................................................................. 16

9

10

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) .................................................................. 18

11

12

*Crowley v. Epicept Corp.*,
    883 F.3d 739 (9th Cir. 2018)................................................................................... 19

13

*Downie v. BF Weston, LLC*,
    2016 WL 7451427 (S.D. Fla. 2016)........................................................................ 16

14

15

*General Motors Corp. v Superior Ct.*,
    12 Cal. App. 4th 435 (1993) ................................................................................... 16

16

*Harris v. Best Buy Stores, L.P.*,
    2018 WL 984220 (N.D. Cal. 2018).......................................................................... 16

17

18

*Hebert v. MudTech Servs.*,
    2015 WL 5602669 (W.D. Pa. 2015) ........................................................................ 16

19

*Howard v. Am. Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000)................................................................................... 16

20

21

*Huverserian v. Catalina Scuba Luv, Inc.*,
    184 Cal. App. 4th 1462 (2010) ............................................................................... 18

22

23

*Jensen v. Secorp Indus.*,
    2019 WL 8064603 (C.D. Cal. 2019)........................................................................ 12

24

25

*Kaufman v. Goldman*,
    195 Cal. App. 4th 734 (2011).............................................................................. 1, 16

26

*Limetree Ests. LLC v. City of Rancho Palos Verdes*,
    2025 WL 740180 (C.D. Cal. 2025)......................................................................... 10

27

28

*MacDonald v. Seattle*,
    2007 WL 9775478 (W.D. Wash. 2007) ................................................................... 15

4

*McClain v. 1st Sec. Bank of Wash.*,
   2016 WL 8504775 (W.D. Wash. 2016) ............................................................... 13, 15

*Media Rights Techs., Inc. v. Microsoft Corp.*,
   922 F.3d 1014 (9th Cir. 2019) ..................................................................... 2, 11, 12

*Moreno v. Lane Bryant, Inc.*,
   2011 WL 13217973 (C.D. Cal. 2011) ........................................................................ 17

*Mpoyo v. Litton Electro-Optical Sys.*,
   430 F.3d 985 (9th Cir. 2005) ......................................................................... 11, 12

*Rangel v. PLS Check Cashiers of Cal.*,
   899 F.3d 1106 (9th Cir. 2018) ................................................................. 1, 11, 15, 17

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ...................................................................................... 16

*Sanders v. LoanCare, LLC*,
   2019 WL 12340195 (C.D. Cal. 2019) ......................................................................... 7

*In re Seizure of One Blue Nissan Skyline Auto.*,
   683 F. Supp. 2d 1087 (C.D. Cal. 2010) .................................................................... 10

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011) ...................................................................................... 12

*In re Syncor ERISA Litigation*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................. 1, 16

*Tahoe-Sierra Pres. Council Inc. v. Tahoe Reg'l Planning Agency*,
   322 F.3d 1064 (9th Cir. 2003) ........................................................................... *passim*

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ........................................................................................ 1, 10, 11

*United States v. Liquidators of Eur. Fed. Credit Bank*,
   630 F.3d 1139 (9th Cir. 2011) .................................................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d. Cir. 2000) .............................................................................. 1, 14, 16

*Wojciechowski v. Kohlberg Ventures, LLC*,
   923 F.3d 685 (9th Cir. 2019) ..................................................................................... 17

**Statutes**

28 U.S.C. § 1927 ................................................................................................... 19, 20

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In 2023, over 5,000 PAGA and wage class actions were filed in California (which was an increase of 47% from 2020).[1] Such class actions would overwhelm the court system if they all went to trial, thus there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation* ("*Syncor*"), 516 F.3d 1095, 1101 (9th Cir. 2008); *Kaufman v. Goldman*, 195 Cal. App. 4th 734, 745 (2011) ("strong public policy favoring settling of disputes"). After varying levels of litigation, class actions typically settle. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d. Cir. 2000) ("Broad class action settlements are common, since defendants…would otherwise face nearly limitless liability from related lawsuits."). "Practically speaking, [however,] class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability." *Id.*

In addition to the terms of the settlement itself, once a class action settlement is finally approved by a court, "[r]es judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties." *Tahoe-Sierra Pres. Council Inc. v. Tahoe Reg'l Planning Agency* ("*Tahoe*"), 322 F.3d 1064, 1077 (9th Cir. 2003).[2] Res judicata "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate," "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The "doctrine is intended to promote judicial efficiency and the finality of judgments by requiring that all related claims be

---

[1] *See* https://www.shrm.org/topics-tools/employment-law-compliance/california-class-action-trends.

[2] *See Rangel v. PLS Check Cashiers of Cal.*, 899 F.3d 1106, 1110 (9th Cir. 2018) ("[C]lass settlement resulting in final judgment…is as conclusive a bar as a judgment rendered after trial.").

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

brought together or forfeited." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019).

Plaintiffs are former PNC employees, who were class members in the *Kazi* class action that settled in 2024. Plaintiffs did not opt out of the *Kazi* class and, instead, objected to the settlement, claiming that the release was too broad and ambiguous, and that they were not receiving sufficient compensation. The *Kazi* court rejected Plaintiffs' objections, ruling that "the language of the release is clear" and the "scope of the release does not render the amount of the settlement unfair to class members." *Kazi*, Dkt. 275 at 2-3.[3] The *Kazi* court then approved the settlement as fair and reasonable, and entered final judgment. *Id.* Disagreeing with the *Kazi* court's ruling, Plaintiffs appealed the final judgment but dismissed that appeal after this Court entered a stay pending disposition of the appeal. Plaintiffs now seek to minimize the *Kazi* release and final judgment that they objected was overbroad. To streamline this litigation, PNC now moves for judgment on the pleadings against Plaintiffs based on the settlement, release, and final judgment in *Kazi*. Plaintiffs' claims are barred through June 1, 2023, because they were or could have been brought and arise out of the facts alleged in *Kazi*.

Plaintiffs admit that they are bound by the release and final judgment in *Kazi* but now argue that the *Kazi* release is narrow and their claims (in *Melian*) are unrelated to the *Kazi* facts. Not so. Both cases focus on California MLOs, MLO compensation, how MLO compensation plans operate, whether MLOs suffer improper deductions, what productive and nonproductive work MLOs perform, and whether MLOs are fully compensated for all time worked. Both cases thus involve the same basic documents, such as time reporting and break policies, compensation plans, work schedules, time records, compensation records, and pay statements. And, both cases assert the same basic claims: failure to pay for all time worked, illegal deductions from wages, failure

---

[3] For the Court's convenience, all *Kazi* pleadings are cited as "*Kazi*, Dkt. #" and attached as exhibits to the Request for Judicial Notice. This Court previously recognized that it may take judicial notice of documents on file in federal courts and took notice of *Kazi* pleadings. Dkt. 28 at 2 (citing Fed. R. Evid. 201 and *Harris v. Cnty. Of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012)). PNC respectfully requests that this Court take judicial notice of the *Kazi* pleadings here as well.

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

to pay all amounts due on termination (with related waiting time penalties), failure to provide compliant pay statements, unfair business practices, and attorneys' fees and costs. The Ninth Circuit has repeatedly cautioned against "imaginative attorney[s]" who attempt to "avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated." *Tahoe*, 322 F.3d at 1077. In *Kazi*, Plaintiffs were compensated for and released all these claims through June 1, 2023, thus those claims should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    *Kazi* was filed.

On June 28, 2018, Tanzeer Kazi filed a wage class action against PNC in Alameda County Superior Court. *Kazi*, Dkt. 1-2. PNC removed the action to the Northern District of California. *Kazi*, Dkt. 1. The operative complaint in *Kazi* alleged that PNC failed to pay MLOs all wages due, failed to pay for all time worked, failed to provide compliant breaks or break pay, made improper deductions from pay, failed to pay all amounts due on termination (with related waiting time penalties), failed to maintain proper time and pay records, failed to provide proper pay stubs, engaged in unfair business practices, and violated the Private Attorneys General Act ("PAGA"). *Kazi*, Dkt. 194-1. The complaint discussed how MLOs were compensated, the types of work they performed, and the records that PNC maintained. *Id. Kazi* defined the relevant class as "all persons whom PNC employed in the State of California as a Mortgage Loan Officer at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit." *Id.* ¶ 7. *Kazi* sought a declaration that PNC was violating the California Labor Code and Wage Orders, an award of monetary damages, penalties, attorneys' fees, costs, and "injunctive relief prohibiting future violations of the rights of the Class members to unpaid wages." *Id.* at 14-15.

### B.    Kazi contemporaneously described his class claims in PAGA Notices.

Kazi's counsel sent a letter dated January 25, 2019 ("PAGA Notice") to the California Labor & Workforce Development Agency ("LWDA") regarding the pending

*Kazi* case. *Kazi*, Dkt. 158-4 at 151-153. The PAGA Notice incorporated prior PAGA Notices submitted to LWDA by reference, which included copies of the *Kazi* complaints. *Id.* The PAGA Notice detailed unpaid time and overtime claims, which illustrates that those claims arose from the same factual predicate as Kazi's other claims.[4] *Id.* The PAGA Notice stated:

> A **major point** of my correspondence is that PNC **does not pay MLOs for all work time**. In some cases, this involves time that is recorded on MLO time records **and time that is not recorded on MLO time records, but of which PNC has actual or constructive notice**.
>
> Examples of the latter included **significant work in the evenings and weekends that can involve either productive or non-productive time**….PNC's non-payment of wages for all time worked has involved **non-payment of overtime** and non-overtime wages.

*Id.* (emphasis added).

### C.    *Kazi* was actually litigated.

*Kazi* was heavily litigated for six years. *See Kazi*, Dkt. 275 at 3. The *Kazi* plaintiffs sought extensive discovery, including documents and information related to hours worked and overtime. For example, they requested:

- RFP No. 58: "Any and all documents relating to or discussing Defendant's policies and/or practices relating to how it determines which of its MLOs work time is compensable and which is non-compensable."

- RFP No. 60: "Any and all documents relating to or discussing Defendant's policies and/or practices relating to how Defendant determined both the regular and hourly rate to be paid to any Plaintiff or other MLO where Defendant determined that overtime pay was due to be paid to any Plaintiff or other MLO."

---

[4] This is one reason why the claims in the *Kazi* PAGA Notices were expressly included in the *Kazi* release. *Kazi*, Dkt. 262 ¶ 24.

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

*Kazi*, Dkt. 81-1 at 61, 63. Similarly, the first topic in *Kazi*'s Rule 30(b)(6) deposition notice involved "Defendant's compensation plans, salaries, bonuses, commissions **and overtime** provided to class members." *Kazi*, Dkt. 92-3 at 4 (12:11-13).

 *Kazi* also involved heavy motion practice, with some narrowing the initial broad scope (from 2014 through final disposition) of the case. *Id.* First, the court decided that the class end date was June 30, 2019, because MLOs hired after that date were subject to individual arbitration agreements and PNC had modified its incentive plans as of that date. *Kazi*, Dkt. 134 at 17-18. Second, the *Kazi* court held that claims arising prior to January 5, 2017, were barred by settlement, release, and res judicata due to a prior settlement and judgment in *Bland v. PNC Bank, N.A.*, Case No. 2:15-cv-01042-AJS (W.D. Pa.) ("*Bland*").[5] *Kazi*, Dkt. 182 at 28-32. Consequently, the relevant period for class certification purposes was January 5, 2017, to June 30, 2019. *Id.* at 3.

 The *Kazi* court also entered an order holding that certain PNC pay practices (involving regular and incentive pay, and deductions from pay) failed to compensate MLOs properly. *Id.* at 39-40. The Ninth Circuit affirmed. *Kazi*, Dkt. 216.

  **D.**   **The parties reached a settlement in *Kazi* that releases claims through June 1, 2023.**

 The *Kazi* parties attended mediation in May 2023 and reached a tentative settlement on June 1, 2023. *Kazi*, Dkt. 255. With the help of two magistrate judges, the parties finalized the settlement over ten months later. *Id.* The settlement agreement explained that "the Parties desire to fully, finally, and forever settle, compromise, and discharge all known and unknown claims arising out of or based on the facts alleged in the Third Amended Complaint and intend this Settlement to constitute a full and complete settlement and release of all Released Claims against all Released Parties." *Kazi*, Dkt. 262 ¶ 31.

---

[5] *Bland* included federal and state claims for unpaid wages, failure to pay for time worked, improper deductions, and various state violations (including waiting time penalties in California). *Kazi*, Dkt. 182 at 28-32. The *Kazi* court considered the factual allegations and release in *Bland* and held that claims in *Kazi* prior to January 5, 2017, arose from the same facts, were duplicative, and barred.

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Under the settlement, PNC agreed to pay $11,850,000, with substantial amounts allocated to class members pursuant to a detailed formula covering periods through June 1, 2023. *Kazi*, Dkt. 262 ¶¶ 35-39. The average payment was about $36,400 per person.[6] *Kazi*, Dkt. 255-1 ¶ 9.

In exchange for payment, class members agreed to "fully, finally, and forever release, settle, compromise, relinquish, and discharge any and all of the Released Parties of and from any and all Released Claims." *Kazi*, Dkt. 262 ¶¶ 61-62. The settlement provides a detailed definition of "Released Claims," stating in relevant part:

> "Released Claims" mean any and all known or unknown claims, costs, damages, interest, attorneys' fees, penalties, obligations, causes of action, and/or relief of any kind or nature (i.e., whether under statute, contract, common law, or equity), during the Settlement Period, arising out of or based on the facts alleged in the Third Amended Complaint, including but not limited to claims for violations of California Labor Code §§ 201, 202, 203, 204, 204b, 210, 216, 221, 223, 225.5, 226, 226(a), 226(b), 226(e)(2)(B), 226.2, 226.3, 226.7, 512, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 2698, 2699, 2699.3, and 2802; violations of applicable California Wage Orders (including 4-2001 and 9-2001) §§ 3-5, 7-8, 11-12, 17, and 20; violations of California Business & Professions Code § 17200, et seq.; violations of and penalties under PAGA (including in relation to each issue and provision listed in this Settlement or otherwise covered in the Action, Complaint, and/or PAGA Notices).[7]

*Id.* ¶ 24. Consistent with the broad allegations in the *Kazi* complaints, the Settlement Period was defined as "June 28, 2014 through June 1, 2023." *Id.* ¶ 27.

---

[6] According to *Kazi* class counsel, Plaintiffs received "almost a half a million dollars under the settlement." *Kazi*, Dkt. 277 at 25:5-9.

[7] The term "PAGA Notices" was defined in the settlement to include all letters sent by Kazi class counsel to the LWDA. *Kazi*, Dkt, 262 ¶ 20.

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

On June 24, 2024, after full briefing and argument, the *Kazi* court granted preliminary approval of the settlement. *Kazi*, Dkt. 263. The court established a schedule for notice and final approval, including a deadline for class members to object or opt out of the *Kazi* settlement by September 20, 2024. *Id.*

### E.    Plaintiffs filed the instant action.

On September 18, 2024, Plaintiffs filed *Melian* in Los Angeles County Superior Court. Dkt. 1-1. The *Melian* complaint alleges PNC failed to pay MLOs all wages due, failed to pay for all time worked, failed to provide compliant meal breaks or break pay, made improper deductions, failed to maintain proper time and pay records, failed to provide proper pay stubs, and engaged in unfair business practices.[8] *Id.* ¶¶ 123-170. Those claims are asserted on behalf of a class identical to that in *Kazi*—"all persons whom PNC employed in the State of California as an MLO at any time in the last four years before the filing of this action until such time as there is a final disposition of this lawsuit." *Id.* ¶ 114. *Melian* was filed on September 18, 2024, so the class period for *Melian* overlaps with the *Kazi* Settlement Period from September 18, 2020, through June 1, 2023.

### F.    Plaintiffs objected to the *Kazi* settlement, and the *Kazi* court overruled those objections and granted final approval of the settlement.

Plaintiffs could have opted out of the *Kazi* settlement but did not.[9] *Kazi*, Dkt. 270-2 (no class members opted out). Instead, they filed identical objections to the settlement on September 20, 2024. *Kazi*, Dkts. 267, 268. The objections explained that Plaintiffs had filed the *Melian* action, argued that the release included in the *Kazi* settlement was overbroad and ambiguous, and asked the *Kazi* court to limit the release to exclude the

---

[8] *Melian* asserts violations of the same Labor Code sections and Wage Orders that were explicitly released in the *Kazi* agreement—Labor Code sections 201, 202, 204, 221, 558, 1194, 1197, 1198, Wage Order 4, and Business and Professions Code section 17200. *Compare* Dkt. 1-1 ¶¶ 123-170 *with Kazi*, Dkt. 262 ¶ 24.

[9] If Plaintiffs wanted freedom to pursue all claims, they could have simply opted out. *Sanders v. LoanCare, LLC*, 2019 WL 12340195, at *12 (C.D. Cal. 2019) (broad releases are appropriate "because Class Members who do not wish to have their claims released may elect to opt out of the settlement"). Instead, Plaintiffs attempt to profit twice from the same claims.

claims asserted here. *Id.* No other class members objected to the *Kazi* settlement. *Kazi*, Dkt. 275 at 1:18-19.

      In response, PNC explained that the *Kazi* agreement used release language that courts in the Ninth Circuit have repeatedly approved. *Kazi*, Dkt. 271 at 4:20-13:18. PNC also noted that Plaintiffs sought improper relief that the *Kazi* court lacked authority to provide. *Id.* at 13:19-15:17.

      On October 16, 2024, the *Kazi* court held a fairness hearing to allow the parties and the Plaintiffs/objectors to discuss the enforceability of the *Kazi* agreement. *Kazi*, Dkt. 277. At that hearing, Plaintiffs' counsel argued:

- The settlement was a "sweetheart deal" where "defendant receives substantial benefits, usually in the form of a broad and sweeping release." *Id.* at 5:7-12.

- The court must presume that "PNC is correct…that the release does include our claims" and address the question "Is it a fair release?" *Id.* at 9:25-10:2.

- The settlement amount was "not fair, reasonable, or adequate to release claims that Mr. Treon and Ms. Melian have for over $100 million, especially when the named plaintiff doesn't even have those claims or there's a conflict of interest because she was terminated in February 2019…. As a matter of law, she can't possibly release those claims." *Id.* at 23:16-24.

- "If plaintiffs want to say that they did the evaluation and this overtime and MVT claim that's the basis of our objection is without merit, then they need to present evidence to you. They need to tell you what diligence they did and why it lacks merit." *Id.* at 17:23-18:2.

In response, *Kazi* class counsel explained:

- The *Kazi* court "ordered [PNC to] give us wage data, and they actually gave us wage data…through the end of the class period." *Id.* at 31:10-13.

- Counsel reviewed changes to PNC's MLO compensation plan (what Plaintiffs call MVT), "took substantial discovery" on the changes, and concluded "***We do not evaluate that as an unlawful compensation plan….*** [A]n employer is

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

permitted...to change your payment plan to comply with the law. And when you do so, you're allowed to reduce the payments that might otherwise be due to loan officers if they hadn't changed the plan." *Id.* at 27:22-28:4, 32:25-33:3 (emphasis added).

- "These claims were valued," "they're not as valuable as the objectors contend," and "[m]illions of dollars have been paid for the post-2019 period and for claims that are explicitly allocated in the formula." *Id.* at 28:18-32:3.

Then, PNC's counsel explained to the Court that the release covers claims including "the compensation plan and [its] structure," "overtime issues," claims for "time that was not compensated," "deduction-type claims," "work time claims," and "waiting time claims." *Id.* at 36:10-37:23.

On October 21, 2024, the *Kazi* court overruled Plaintiffs' objections and granted final approval of the *Kazi* settlement. *Kazi*, Dkt. 275. It further:

- ruled that the "release is clear" and complies with Ninth Circuit standards because it only releases claims that arise out of or are based on the facts that gave rise to the *Kazi* settlement, *id.* at 2:7-14;

- rejected Plaintiffs' argument that the release was "unfair because it releases valuable claims that were not adequately taken into account by the parties when they negotiated the settlement amount," *id.* at 2:15-18;

- recognized that there was "extensive discovery," "including the production of payroll data, time records, and compensation plans, as well as depositions of key witnesses," *id.* at 3:3-5;

- explained that "the settlement was negotiated over a period of ten months with the assistance of an experienced mediator and two magistrate judges and it is apparent from [the release language and the definition of the Settlement Period (ending June 1, 2023) that the parties and the mediators did not exclude from the negotiations consideration of claims based on conduct that occurred after 2019," *id.* at 3:9-13; and

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

- concluded the *Kazi* settlement was "fair and reasonable and in the best interest of the class," *id.* at 3:15-17.

The *Kazi* court entered a "Final Judgment and Dismissal of Action with Prejudice" the following day. *Kazi*, Dkt. 276.

### G. Plaintiffs appeal in *Kazi*, this Court stays *Melian*, then Plaintiffs dismiss the appeal.

On November 7, 2024, Plaintiffs filed a notice of appeal in *Kazi* ("*Kazi* Appeal"). *Kazi*, Dkt. 278. Thereafter, PNC moved to stay this action pending resolution of the *Kazi* Appeal given the impact the appeal would have on claims before this Court. Dkt. 21. This Court granted that motion. Dkt. 28.

Days later, Plaintiffs filed a motion to dismiss the *Kazi* Appeal. *Kazi* Appeal, Dkt. 21. After Plaintiffs agreed to pay PNC's costs on appeal, PNC stipulated to dismissal. *Kazi* Appeal, Dkt. 30. The Ninth Circuit then dismissed the appeal with prejudice. *Kazi* Appeal, Dkt. 32.

## III.   LEGAL STANDARD

"The standard for assessing a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss." *United States v. In re Seizure of One Blue Nissan Skyline Auto.*, 683 F. Supp. 2d 1087, 1089 (C.D. Cal. 2010). "[A] court must accept as true all material allegations in the complaint and must construe those allegations in the light most favorable to the plaintiff." *Id.* However, "the court is not limited to…the pleadings," *id.*, and may also consider "any matter of which the court can take judicial notice for the factual background of the case," *Limetree Ests. LLC v. City of Rancho Palos Verdes*, 2025 WL 740180, at *4 (C.D. Cal. 2025).

## IV.   ARGUMENT

### A.   Res judicata bars Plaintiffs' claims through June 1, 2023.

Res judicata protects against vexatious and repetitive litigation. *Taylor*, 553 U.S. at 892 ("protect[s] against…multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

decisions"); *Media Rights Techs.*, 922 F.3d at 1020 ("promote[s] judicial efficiency and the finality of judgments by requiring that all related claims be brought together or forfeited").

Under federal law,[10] res judicata requires proof of three elements: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011). All three elements are met here: Plaintiffs were members of the *Kazi* class; the *Kazi* claims were dismissed by final judgment; and *Kazi* and *Melian* have an identity of claims (*i.e.*, they are based on the same nucleus of facts).

### 1.     Plaintiffs are parties in both *Kazi* and *Melian*, thus privity exists.

Res judicata requires "privity between the parties." *Tahoe*, 322 F.3d at 1081. When "parties in both actions are identical," they are "obviously in privity." *Id.*; *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005) (privity exists if "plaintiff and defendant are identical in both actions"). Such is the case here.

### 2.     *Kazi* was dismissed by final judgment on the merits.

Res judicata requires dismissal "on the merits." *Mpoyo*, 430 F.3d at 988. "It is well-settled that a class settlement resulting in final judgment is sufficient to meet the final and on the merits element of res judicata, and is as conclusive a bar as a judgment rendered after trial." *Rangel*, 899 F.3d at 1110.

The *Kazi* court held a "final fairness hearing," considered argument by Plaintiffs' counsel, found the class settlement was "fair and reasonable," overruled Plaintiffs' objections, and granted final approval of the settlement. *Kazi*, Dkt. 275 at 1-3. It then entered final judgment. *Kazi*, Dkt. 276. Thus, there was a final judgment on the merits.

### 3.     There is an identity of claims between *Kazi* and *Melian*.

Res judicata requires an "identity of claims," but this "does not mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an issue

---

[10] Because the *Kazi* judgment was entered by a federal court, federal res judicata law applies. *Taylor*, 553 U.S. at 891; *Tahoe*, 322 F.3d at 1077 n.10.

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

that has, or could have, been litigated." *Tahoe*, 322 F.3d at 1077. Instead, the Ninth Circuit considers four criteria: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Mpoyo*, 430 F.3d at 987-88. All four criteria support an identity of claims here.

<u>Kazi</u> *and* Melian *share the same transactional nucleus of facts:* The "same transactional nucleus of facts" consideration is the most important and is often "outcome determinative." *Id.*; *see Media Rights Techs.*, 922 F.3d at 1028; *Tahoe*, 322 F.3d at 1078. This involves "a transaction test": "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Mpoyo*, 430 F.3d at 987-88. Courts have repeatedly held that claims arising from the same employment relationship and compensation policies/practices satisfy the common nucleus standard. *E.g.*, *id.* (holding that "Title VII, FLSA, and FMLA claims form a convenient trial unit"); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (state and federal wage claims "clearly derive from such a common nucleus of operative facts since they arise out of the same compensation policies and practices"); *Jensen v. Secorp Indus.*, 2019 WL 8064603, *3 (C.D. Cal. 2019) (identity of claims in federal and state wage suits); *Cancilla v. Ecolab, Inc.*, 2014 WL 2943237, *5-6 (N.D. Cal. 2014) (misclassification and off-the-clock cases had "the same nucleus of operative facts" because both were "based on the alleged failure…to pay overtime").

In this case, there can be no dispute that *Kazi* and *Melian* "arise from the same transactional nucleus of facts." Both suits focused on claims by the same MLOs; at the same business locations; against the same employer; under the same company policies; under the same compensation (regular pay and commission) arrangements; covering the same workweeks, shifts, breaks, and payments; and based on the same assertion that

12

PNC did not pay for all time worked. A comparison of the *Kazi* and *Melian* complaints highlight their common nucleus of facts.[11] For example, *Kazi* and *Melian* both:

- Assert claims on behalf of California MLOs, using identical class definitions. *Kazi*, Dkt.194-1 ¶ 7; *Melian*, Dkt. 1-1 ¶ 114.

- Focus on "pay practices and policies" and compensation arrangements for MLOs. *Kazi*, Dkt.194-1 ¶¶ 2, 10, 16-21; *Melian*, Dkt. 1-1 ¶¶ 2-6, 27-113.

- Assert PNC made unlawful deductions and thus had improper commission plans. *Kazi*, Dkt.194-1 ¶¶ 10, 16; *Melian*, Dkt. 1-1 ¶¶ 4-5, 80-113.

- Focus on MLO duties and assert PNC failed to maintain accurate time records and pay for all time worked. *Kazi*, Dkt.194-1 ¶¶ 2, 28-30, 34, 38-39; *Melian*, Dkt. 1-1 ¶¶ 27-56.

- Assert PNC failed to provide MLOs with all compensation due, including amounts due after termination and waiting time penalties. *Kazi*, Dkt.194-1 ¶¶ 24, 28-30, 38; *Melian*, Dkt. 1-1 ¶¶ 6, 132-143.

- Claim violations of virtually identical provisions of California's Labor Code, Wage Orders, and Unfair Competition Law. *Kazi*, Dkt.194-1 ¶¶ 22-47; *Melian*, Dkt. 1-1 ¶¶ 123-170.

- Seek wages, damages, penalties, restitution, attorneys' fees, expenses, and other relief. *Kazi*, Dkt.194-1 at 14-15; *Melian*, Dkt. 1-1 at 35.

Although the *Melian* complaint contains more detail, the claims in *Kazi* and *Melian* arise from the same common nucleus of facts. This is further confirmed by the *Kazi* PAGA Notices, which, for example, allege the same overtime violations as in *Melian*. *Melian*, Dkt. 1-1 ¶ 32 ("MLOs must work long hours, including weekends and evenings"); *Kazi*, Dkt. 158-4 at 152 (MLOs' work "include[s] significant work in the evenings and weekends"). The first consideration warrants a finding of res judicata.

---

[11] Comparing pleadings is one way to determine if suits arise from the same "transactional nucleus of facts." *McClain v. 1st Sec. Bank of Wash.*, 2016 WL 8504775, *2 (W.D. Wash. 2016).

*Prosecution in* Melian *would destroy PNC's settlement interests in* Kazi*:* PNC paid for a full and final resolution of all claims (known or unknown, asserted or unasserted) through June 1, 2023, "arising out of or based on the facts alleged" in *Kazi*. *Kazi*, Dkt. 262 ¶¶ 24, 61-62. Allowing Plaintiffs to pursue claims in *Melian* for the same putative class members and based on the same duties, policies/practices, compensation arrangements, pay periods, shifts, breaks, and pay at issue in *Kazi* for periods through June 1, 2023, would defeat the express purpose of the *Kazi* settlement. The second consideration supports a finding of res judicata.[12] *Cancilla*, 2014 WL 2943237 at *6 ("[P]rosecution of this case would also infringe on Defendant's right to end litigation and put to rest California wage and hour claims.").

Kazi *and* Melian *involve the same claimed infringement:* Both *Kazi* and *Melian* claim that PNC's compensation arrangements involved improper deductions and that MLOs were not properly paid for all time worked. *Kazi*, Dkt. 194-1 ¶¶ 16, 27-32; *Melian*, Dkt. 1-3 at ¶¶ 43-113. Indeed, *Kazi* and *Melian* assert violations of the same Labor Code provisions, the same Wage Orders, and the same Unfair Competition Law rooted in this essential allegation of nonpayment. *Kazi*, Dkt. 194-1 ¶¶ 22-47 and *Melian*, Dkt. 1-3 ¶¶ 123-170. The third consideration supports a finding of res judicata.

Kazi *and* Melian *involve the same foundational evidence:* *Kazi* and *Melian* rely on the same evidence. *Kazi* class counsel gathered and used evidence focused on MLO pay and compensation arrangements, including regular pay, commissions, and deductions. *Kazi*, Dkt. 96 at 7 (holding the common evidence in *Kazi* involved PNC's "incentive plan documents" and "payroll records"). Similarly, *Melian* focuses on MLO pay and compensation arrangements. Dkt. 1-3 ¶¶ 80-113. The fourth consideration supports a finding of res judicata. *Cancilla*, 2014 WL 2943237 at *6 ("Both actions rely on payroll and employment records" and the "overall practice of paying overtime.").

---

[12] Any other conclusion would discourage settlement. *Wal-Mart Stores*, 396 F.3d at 106 ("[C]lass action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability.").

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS**

**4.     Whether both cases involve precisely the same claims is irrelevant.**

Unable to contest the common nucleus of facts in *Kazi* and *Melian*, Plaintiffs have indicated they will argue that res judicata does not apply because incentive plans changed in 2019 and *Kazi* involved unpaid time instead of unpaid overtime. This is the type of imaginative game-playing against which the Ninth Circuit cautioned in *Tahoe*. It should be rejected.

Res judicata bars re-litigation of all grounds of recovery that were **or could have been** asserted in a previous action between the parties. It is immaterial whether the claims subsequently asserted were actually pursued in the action that led to the judgment. *Id.* "Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims *could have been brought* in an earlier action." *McClain*, 2016 WL 8504775, at *2 (citing *Tahoe*).

Put simply, a plaintiff who has multiple theories for relief based on common facts, but who "presents only one of them…may not maintain a second action in which he tenders the other theory." *MacDonald v. Seattle*, 2007 WL 9775478, *6 (W.D. Wash. 2007) (quoting Restatement (Second) of Judgments §25 cmt.e (1982)). Thus, the *Kazi* plaintiff's decision to highlight claims based on pre-2019 commission plans and to minimize claims based on post-2019 plans (because class counsel concluded those plans were legal) does not alter the fact that the *Kazi* complaint asserts (and the parties settled) all compensation plan claims and that all such claims are barred by res judicata. Similarly, all wage claims that arise from the same work, pay/time records, and compensation amounts that were at issue in *Kazi* are barred, despite the *Kazi* plaintiff's decision to prioritize some theories for unpaid wages over others.

Res judicata applies to this nexus of facts. For example, the Ninth Circuit recently found that claims asserted under the California Labor Code and the FLSA arise from the same common nucleus of operative facts even though the statutes provide different standards for class certification, liability, and damages. *Rangel*, 899 F.3d at 1111.

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Likewise, other courts have found that res judicata bars different, but factually-related wage claims. *Harris v. Best Buy Stores, L.P.*, 2018 WL 984220, *6 (N.D. Cal. 2018) (barring different claims; noting "the Ninth Circuit has more broadly construed wage and hour claims for purposes of res judicata"); *Downie v. BF Weston, LLC*, 2016 WL 7451427, *2 (S.D. Fla. 2016) (barring state-law claims because "[a]ny work related compensation to which Plaintiff may have been entitled arose out of the same facts, circumstances and transactions that formed the basis for [prior] FLSA claim"); *Hebert v. MudTech Servs.*, 2015 WL 5602669, *2, *6-7 (W.D. Pa. 2015) (applying claim splitting to bar state overtime claims by FLSA opt-in who became a class member in a state-law class action). Here, *Kazi* involved claims under the California Labor Code, Wage Orders, and Unfair Competition Laws, settled those claims, and dismissed them. Res judicata bars Plaintiffs' attempt to pursue repeated claims under the same provisions on the same facts for the same MLOs.

### B.    The claims asserted in this action were released by Plaintiffs through the *Kazi* settlement.

There is a strong public policy favoring settlement of wage class actions. *Syncor*, 516 F.3d at 1101; *Kaufman*, 195 Cal. App. 4th at 745; *Wal-Mart Stores, Inc.*, 396 F.3d at 106. "[T]he interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement." *General Motors Corp. v Superior Ct.*, 12 Cal. App. 4th 435, 439 (1993).

The Ninth Circuit recognizes that a class release can bind absent class members who subsequently assert "factually related claims" if those claims arise from the "same factual predicate" as the first claims. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006) (barring claims based on a different theory of liability because they were based on the same "interchange rates" as prior claims); *Howard v. Am. Online, Inc.*, 208 F.3d 741, 746-47 (9th Cir. 2000) (barring RICO claims because earlier state-law claims involved the same "billing practices"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-89 (9th Cir. 1992) (new theories were "based on the

DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

identical factual predicate" regarding bond defaults and barred because they had the "same common nucleus of operative fact" as prior claims). Thus, courts in this circuit routinely hold that unasserted wage claims can be released where those claims involve the same group of individuals working for the same employer at the same locations under the same compensation arrangements. *Moreno v. Lane Bryant, Inc.*, 2011 WL 13217973, *5 (C.D. Cal. 2011) ("While Moreno now seeks to pursue additional Labor Code violations against Defendants that were not alleged in the first class action, similar to *Villacres*, these new claims are within the scope of the *Moody* settlement because they relate to Defendants' wage related Labor Code violations and are encompassed within the release."). This factual nexus analysis is similar to the res judicata standard. *See Rangel*, 899 F.3d at 1109 (holding the factual predicate analysis is coextensive with the scope of res judicata). At the same time, the Ninth Circuit has recognized that a class release can be narrower than res judicata and expressly exclude certain claims from a release. *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019).

The *Kazi* settlement releases "any and all known or unknown claims...arising out of or based on the facts alleged in the Third Amended Complaint." Dkt. 262 ¶¶ 24, 61-62. The *Kazi* court held that the settlement/release were "fair and reasonable" and granted final approval of those terms. *Kazi*, Dkt. 275 at 3:15-17. Plaintiffs did not opt out of the *Kazi* settlement and are bound by the *Kazi* release. That release encompasses and bars the claims and relief sought in Plaintiffs' complaint through June 1, 2023.

First, as the *Kazi* court held in its Order granting final approval, the parties clearly negotiated and agreed to release claims based on conduct that occurred after 2019. *Kazi*, Dkt. 275 at 3:9-13 ("[T]he parties did not exclude from the [settlement] negotiations consideration of claims based on conduct that occurred after 2019."). Any other interpretation would make the parties definition of the "Settlement Period" (running through June 1, 2023) meaningless.

Second, the *Kazi* parties included an express exclusion of claims arising after June 1, 2023. *Kazi*, Dkt. 262 ¶ 24. The settlement does not contain any other exclusion. *Id.*

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS**

Under the maxim of "expressio unius est exclusio alterius" in contract interpretation, the express exclusion of certain items suggests that other items are not excluded. *Huverserian v. Catalina Scuba Luv, Inc.*, 184 Cal. App. 4th 1462 (2010).

Third, the *Kazi* release encompasses the claims asserted in this action because they arise from and are based on the facts alleged in the *Kazi* complaint—the employment and compensation of PNC's California-based MLOs. Indeed, the *Kazi* complaint specifically discusses MLO compensation plans, improper deductions, and alleged underpayments in violation of California law. *Kazi*, Dkt. 194-1 ¶ 16. Those plans were at the heart of the factual and legal issues in *Kazi*, and they are at the heart of Plaintiffs' allegations here. Dkt. 1-3 ¶¶ 43-113. Similarly, both actions discussed MLO work expectations and duties and asserted claims arising from those duties. *E.g.*, *Kazi*, Dkt. 194-1 ¶ 16; *Melian*, Dkt. 10. *Melian* thus has the same factual predicate as *Kazi*.

Fourth, the *Kazi* release included a detailed list of the claims that the parties understood to arise from the facts alleged in *Kazi*. *Kazi*, Dkt. 262 ¶ 24. That extensive list includes the claims asserted by Plaintiffs here.

Fifth, the *Kazi* settlement distributed settlement funds to class members for claims through June 1, 2023. *Kazi*, Dkt. 275 at 9-14. *Kazi* class counsel confirmed that they conducted discovery and investigated claims asserted by Plaintiffs (e.g., changes in the MLO commission plan) and included them in their evaluation of the case.[13] *Kazi*, Dkt. 277 at 27:22-28:4, 32:25-33:3. The distribution for periods after 2019 (while still consisting of millions of dollars) was lower because, after assessing continuing claims involving MLO commission plans, unpaid wages, waiting time penalties, among other things, *Kazi* class counsel concluded that those claims were not as valuable as earlier claims. *Id.* at 28:18-32:3.

---

[13] Even if claims are not asserted and are not included in class counsel's evaluation of the case, they are still covered by a settlement release if they arise from the same factual nexus. *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 2038 (N.D. Cal. 2016) (claims were properly covered by release even though they were unasserted and counsel did not consider them when negotiating).

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Finally, in their *Kazi* Appeal, Plaintiffs conceded that the *Kazi* release encompasses the claims asserted in this action. The sole reason for Plaintiffs' appeal was to limit the scope of the release to exclude the claims Plaintiffs assert here.  Dkt. 21-3 ¶ 3 (identifying the issue on appeal as "[w]hether the class action settlement amount is unfair, unreasonable, and inadequate because it fails to adequately compensate class members for the valuable overtime and other claims"). If Plaintiffs believed the release did not encompass those claims, they would have had no need to object to the *Kazi* settlement, let alone appeal the final judgment.

Thus, there can be no doubt that the *Kazi* release applies to the claims asserted in *Melian* and bars those claims through June 1, 2023.

## C.    PNC is entitled to reasonable attorneys' fees based on Plaintiffs' breach of the *Kazi* settlement agreement.

Should PNC prevail on this Motion, in whole or in part, an award of attorneys' fees is warranted as a matter of contract and under 28 U.S.C. § 1927.

Initially, the *Kazi* settlement agreement provides for attorneys' fees if a party is required to take legal action to enforce its provisions. *Kazi*, Dkt. 262 ¶ 78. It states: "In any such enforcement action, should the Court determine that the breach was material and not cured within 30 calendar days after notice or was not in good faith, the successful Party or Parties will be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs." *Id.* PNC has provided Plaintiffs with repeated notice that their claims are barred by and in breach of the settlement. That notice is evidenced in joint status reports filed with this Court and served on Plaintiffs' counsel. *E.g.*, Dkt. 23, 29, 37. Plaintiffs' breach is material. The *Kazi* settlement was intended "to fully, finally, and forever settle, compromise, and discharge all known or unknown claims arising out of or based on the facts alleged" and to be "a full and complete settlement and release." *Kazi*, Dkt. 262 ¶ 31. Plaintiffs' pursuit of claims covered by the *Kazi* release defeats that purpose and is thus material. *Crowley v. Epicept Corp.*, 883 F.3d 739, 746 (9th Cir. 2018) ("A breach is material if it affects the purpose of the

contract in an important or vital way."). Under the *Kazi* settlement's terms, an award of fees against Plaintiffs is warranted.

In addition, an award of costs and fees against counsel may be warranted under 28 U.S.C. § 1927, which provides that an "attorney or other person" "who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Plaintiffs' counsel have unreasonably multiplied the proceedings. Plaintiffs could have opted out of *Kazi* but did not do so. Instead, they reaped the benefits of the settlement—receiving almost half a million dollars. Plaintiffs asked the *Kazi* court to modify the settlement in that case because the release was overbroad and undervalued their claims. After the *Kazi* court overruled their objections, they appealed, making the same arguments about overbreadth and undervalue. Now that the *Kazi* Appeal has been dismissed and *Kazi* is final, Plaintiffs and their counsel want a second bite at the apple, making arguments contrary to their prior positions. Such gameplaying by Plaintiffs and their counsel should not be countenanced, and Section 1927 provides this Court with the discretionary authority to send that message.

## V.    **CONCLUSION**

For the foregoing reasons, PNC respectfully requests that this Court grant the Motion and enter a judgment in favor of PNC barring all Plaintiffs' claims through June 1, 2023, and awarding PNC reasonable attorneys' fees and costs incurred in bringing the Motion.

Dated:  July 2, 2025          By: *Cassidy Young*
                                    Paul W. Sweeney, Jr.
                                    Patrick M. Madden
                                    Cassidy T. Young

                                    Attorneys for Defendant
                                    PNC Bank, N.A.

1

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant PNC Bank, N.A., certifies that this brief contains 6,876 words, which complies with the word limit set forth in Local Rule 11-6.1.

Dated: July 2, 2025              By: *Cassidy Young*
                                        Paul W. Sweeney, Jr.
                                        Patrick M. Madden
                                        Cassidy T. Young

                                        Attorneys for Defendant
                                        PNC Bank, N.A.

**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**